UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOSTER POULTRY FARMS,<br><br>Plaintiff,<br><br>v.<br><br>CONTRACTORS BONDING AND INSURANCE COMPANY,<br><br>Defendant. | No. 1:20-cv-01628-DAD-SKO<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. No. 8) |

This matter is before the court on the motion to dismiss filed by defendant on January 29, 2021. (Doc. No. 8.) Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 pandemic, defendant's motion was taken under submission on the papers. (Doc. No. 11.) For the reasons explained below, the court will deny the pending motion to dismiss.[1]

---

[1] The undersigned apologizes for the excessive delay in the issuance of this order. This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion. That situation has now been partially addressed by the U.S. Senate's confirmation of a new district judge for this court on December 17, 2021. Nonetheless, for over twenty-two months the undersigned was left presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants. Unfortunately, that situation sometimes results in the court not being able to issue orders in submitted civil matters within an acceptable period of time. This has been frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel.

1

# BACKGROUND

This is a diversity action involving an insurance coverage dispute between plaintiff Foster Poultry Farms ("Foster Farms") and defendant Contractors Bonding and Insurance Company ("CBIC"), in which Foster Farms alleges that CBIC failed to defend and indemnify it in a personal injury action brought by an individual who allegedly tripped and fell while on Foster Farms's premises.  (*See* Doc. No. 1.)

**A.     The Underlying Action Against Foster Farms in State Court**

On February 21, 2019, Bobby Rathi filed a personal injury complaint in Merced County Superior Court against Foster Farms and twenty unnamed doe defendants, Does 1–10 ("agents or employees of other named defendants [who] acted within the scope of that agency or employment") and Does 11–20 ("persons whose capacities are unknown to plaintiff"), Case No. 19CV00788 ("the underlying action"). (Doc. No. 1 at 27–28.)  Therein, Mr. Rathi asserted two causes of action—general negligence and premises liability.  (*Id.* at 29.)  As to his negligence claim, Mr. Rathi alleged as follows:

> On February 27, 2017, [Mr. Rathi] was employed with Try-Us Transportation and was in the course and scope of his job duties picking up a load when he tripped over a door stopper causing injury to his back, left shoulder, left knee, neck and left hip.  The door stopper was mounted directly in a walk-way, which [Mr. Rathi] was using to go into the building.  Defendants owed a duty of care to [Mr. Rathi] to maintain the property it owned in a reasonable safe condition.  Defendants breached their duty of care to [Mr. Rathi] by negligently maintaining its property in such a dangerous condition as to cause [Mr. Rathi's] injuries and damages.  As a result of Defendants' negligence, [Mr. Rathi] sustained severe injuries, which have required medical treatment and which has caused [Mr. Rathi] to suffer general/special damages all in an amount according to proof.

(Doc. No. 1 at 30.)  As to his premises liability claim, Mr. Rathi further alleged that "[d]efendants owed a duty of care to [Mr. Rathi] to maintain the property it owned, maintained, managed and controlled in a reasonably safe condition as to the door stopper in question," and that defendants breached that duty "by negligently maintaining its property in such a dangerous condition as to cause [Mr. Rathi's] injuries and damages."  (*Id.* at 31.)

/////

1    Mr. Rathi did not name his employer, Try-Us Transportation, Inc. ("Try-Us") as a
2 defendant in the underlying state court action.

3 **B.     Plaintiff Foster Farms's Claims in this Action Against Defendant CBIC**

4    On November 16, 2020, plaintiff Foster Farms filed its complaint initiating this action,
5 alleging that defendant CBIC had a duty to defend and indemnify it in the underlying action
6 because Foster Farms is an "additional insured" under the commercial general liability policy that
7 CBIC had issued Try-Us. (Doc. No. 1 at ¶ 8.)

8    Plaintiff alleges the following in its complaint. Foster Farms entered into an independent
9 contractor agreement with Try-Us, in which Try-Us agreed to provide hauling services to
10 transport Foster Farms's processed goods. (Doc. No. 1 at ¶ 10; *id.* at 33.) Under that agreement,
11 Try-Us was obligated to obtain personal injury liability insurance and to name Foster Farms as an
12 additional insured under that policy. (*Id.* at ¶ 11.) Try-Us obtained commercial general liability
13 insurance from defendant CBIC, policy number A31ACV226, for the period July 29, 2016
14 through July 29, 2017 ("the Policy"), which included coverage for bodily injury and property
15 damage liability. (*Id.* at ¶ 12.) Foster Farms contends that it is entitled to coverage under the
16 Policy because it is an "additional insured," as provided by the Policy's "blanket additional
17 insured" endorsement ("the Endorsement"). (Doc. Nos. 1 at ¶¶ 12, 13; 10 at 58.) In relevant part,
18 the Endorsement provides as follows:

> **A.  Section II - Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused by your negligence in the performance of your ongoing operations performed for that additional insured.

25 /////
26 /////
27 /////
28 /////

3

(Doc. No. 10 at 58.)[2]  The Policy specifies that its use of "you" and "your" refers to the named insured—here, that is Try-Us.  (*See* Doc. No. 10 at 5–6, 31.)

According to Foster Farms, beginning on April 14, 2019 and continuing through August 21, 2020, it "repeatedly tendered and requested that CBIC defend and indemnify it" in the underlying action, but CBIC allegedly wrongfully denied those requests and refused to reconsider its denial.  (Doc. No. 1 at ¶¶ 16–25.)  Plaintiff does attach as exhibits to its complaint copies of the tender letters and correspondence, in which plaintiff informed CBIC that it believed it was entitled to coverage as an "additional insured" because Mr. Rathi was comparatively negligent (for not looking where he was going when he tripped and fell) and that Try-Us was negligent (for not adequately training and supervising Mr. Rathi in safety procedures and protocols).  (*Id.* at 51–52, 92.)  Plaintiff alleges that as a result of CBIC's failure to defend and indemnify it in the underlying state court action, plaintiff "has been compelled to and will continue to incur losses, including, but not limited to, defense, settlement, and investigative costs, as well as attorneys' fees, expert fees and other expenses."  (*Id.* at 26.)

In its complaint, plaintiff asserts the following five claims against defendant CBIC:  (1) breach of contract for failing to defend; (2) breach of contract for failing to indemnify; (3) breach of the implied covenant of good faith and fair dealing for failing to defend; (4) breach of the implied covenant of good faith and fair dealing for failing to indemnify; and (5) declaratory relief.  (Doc. No. 1.)  Plaintiff "seeks to recover the costs of defending the underlying action and any amounts paid in association with settlement of that litigation or any judgment entered in that litigation."  (*Id.* at ¶ 1.).

---

[2]  Although plaintiff refers to the Policy throughout its complaint it did not attach a copy of the Policy to the complaint.  A certified copy of the Policy is attached as an exhibit to the declaration of Scott R. Ostericher, the Assistant Vice President of Claims Operations for CBIC's parent company, which defendant filed in support of its pending motion to dismiss.  (Doc. No. 10.)  In opposing the pending motion, plaintiff did not contest the authenticity of this copy of the Policy.  Thus, the court deems the Policy incorporated by reference into the complaint and considers the provisions of the Policy in ruling on the pending motion.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (finding that the "incorporation by reference" doctrine extends to situations in which "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document").

On January 29, 2021, defendant filed the pending motion to dismiss plaintiff's complaint, contending that plaintiff does not and cannot state cognizable claims against it as a matter of law because Foster Farms does not qualify as an "additional insured" under the Policy. (Doc. Nos. 8, 9.) On February 16, 2021, plaintiff filed an opposition to the pending motion, and on February 23, 2021, defendant filed a reply thereto. (Doc. Nos. 12, 13.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the

plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## ANALYSIS

**A.     The Duty to Defend and Duty to Indemnify under California Law**

As an initial matter, the court notes that the Policy does not contain a choice of law provision. Nonetheless, the parties do not dispute that California law governs the substantive issues in this case. (*See* Doc. Nos. 1 at ¶ 42; 9 at 5–6; 12 at 5.) Indeed, plaintiff's claims and both parties' arguments are based on application of California law, and neither party suggests that the laws of any foreign state should govern. (*Id.*) "In an ordinary diversity case, federal courts apply the substantive law of the forum in which the court is located, including the forum's choice of law rules." *Ins. Co. of N. Am. v. Fed. Exp. Corp.*, 189 F.3d 914, 919 (9th Cir. 1999). "California law applies where no party has 'suggested that the law of a foreign state should furnish the rule of decision.'" *W. Int'l Syndication Corp. v. Gulf Ins. Co.*, 222 F. App'x 589, 591 (9th Cir. 2007)[3] (citing *Hurtado v. Superior Court*, 11 Cal. 3d 574, 581 (1974) (noting that "generally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state"). Accordingly, the court will apply California substantive law in determining whether plaintiff's complaint sufficiently states cognizable claims.

Under California law, "a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). "[T]he [insurer] must defend a suit which *potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966). "The determination [of] whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Horace Mann*, 4 Cal. 4th at 1081. In analyzing the policy, "courts must consider both the [] language in the policy, and the endorsements or exclusions affecting coverage, if any, included in the policy

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

terms." *Modern Dev. Co. v. Navigators Ins. Co.*, 111 Cal. App. 4th 932, 939 (2003). "Facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 296 (1993). "This is so because current pleading rules liberally allow amendment; the third party plaintiff cannot be the arbiter of coverage." *Id.*; *see also Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1995) ("Our Supreme Court, anticipating imaginative counsel and the likelihood of artful drafting, has indicated that a third party is not the arbiter of the policy's coverage. A corollary to this rule is that the insured may not speculate about unpled third party claims to manufacture coverage."). "[E]xtrinsic facts cannot trigger a duty to defend when they relate only to claims that have not been pleaded in the third-party claimant's complaint." *Burlington Ins. Co. v. CHWC, Inc.*, 559 F. App'x 639, 640 (9th Cir. 2014).[4] Thus, "[a]n insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson*, 37 Cal. App. at 1114. "Doubts as to whether particular facts give rise to a duty to defend are resolved in an insured's favor." *AIG Prop. Cas. Co. v. Cosby*, No. 2:15-cv-04842-BRO-RAO, 2015 WL 9700994, at *3 (C.D. Cal. Nov. 13, 2015) (citing *Gray*, 65 Cal. 2d at 269).

An "insurer's duty to defend is broader than its duty to indemnify." *Buss v. Superior Court*, 16 Cal. 4th 35, 46 (1997). Under California law, an "insurer's duty to indemnify runs to claims that are actually covered, in light of the facts proved," and "arises only after liability is established." *Id.* at 45. Thus, the duty to defend and the duty to indemnify are "correlative" but not "coterminous." *Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945, 958 (2001). "Where there is a duty to defend, there *may be* a duty to indemnify; but where there is no duty to defend, there *cannot be* a duty to indemnify." *Id.*

/////

/////

---

[4] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

**B.     Whether Plaintiff's Complaint States Cognizable Claims**

Defendant CBIC contends that all of Foster Farms's claims in this action turn on whether Foster Farms qualifies as an "additional insured" under the Policy, thereby entitling Foster Farms to coverage in the underlying state court action and triggering CBIC's duty to defend and possibly indemnify. (Doc. No. 9 at 6–8.) According to CBIC, all of plaintiff's claims should be dismissed without leave to amend because Foster Farms is not an additional insured under the Policy as a matter of law and is therefore not entitled to coverage under the Policy. (*Id.* at 6–7.)

As noted above, the Endorsement sets forth two requirements for a person or organization (like Foster Farms) to be deemed an additional insured on Try-Us's Policy. First, Try-Us must be performing operations for that person or organization and have a written agreement that such person or organization be added as an additional insured. (Doc. No. 10 at 58.) The parties do not contest that plaintiff has sufficiently alleged facts to satisfy this first requirement; notably, plaintiff alleges that it entered into an independent contractor agreement with Try-Us for hauling services, which states in pertinent part that "Hauler [Try-Us] shall name the Company [Foster Farms] as an additional insured on all liability and property damage policies," and plaintiff has attached a copy of that agreement to its complaint. (*See* Doc. No. 1 at ¶ 10; *id.* at 33, 39.) The parties contest only the second requirement for coverage as an additional insured under the Endorsement, which states that "[s]uch person or organization is an additional insured *only with respect to liability for "bodily injury",* "property damage" or "personal and advertising injury" *caused by your negligence* in the performance of your ongoing operations performed for that additional insured." (Doc. No. 10 at 58) (emphasis added).

In the pending motion, CBIC emphasizes that applying the plain text of the Endorsement to Mr. Rathi's bodily injury claim in the underlying state court action results in the conclusion that "Foster Farms qualifies as an Additional Insured under the [P]olicy only with respect to liability for bodily injury caused by Try-Us Transportation's negligence in the performance of Try-Us Transportation's ongoing operations performed for Foster Farms." (Doc. No. 9 at 7.) CBIC argues that it does not have a duty to defend or a duty to indemnify Foster Farms as an additional insured because the Policy provides "coverage to Foster Farms only where Foster

1 Farms is sued because of the alleged negligence of Try-Us," which CBIC contends is not the case
2 here. (Doc. Nos. 8 at 1–2; 9 at 2.) According to CBIC, in the underlying action brought in state
3 court, Mr. Rathi "alleges only that Foster Farms itself was negligent for its own premises
4 liability," not "that his employer Try-Us [] was negligent in any way or that any act of Try-Us []
5 caused his injury." (Doc. No. 9 at 2.)

6 In its opposition to the pending motion, plaintiff essentially argues that it is an additional
7 insured under the Policy because a central issue as to its affirmative defenses in the underlying
8 state court action is whether Mr. Rathi and Try-Us were "comparatively and/or contributorily
9 negligent in regard to the accident." (Doc. No. 12 at 4.) Specifically, Foster Farms has argued in
10 the underlying state court action that Mr. Rathi "tripped and fell because he was not looking
11 where he was walking." (*Id.* at 5–6.) Foster Farms also contends that to the extent Mr. Rathi
12 claims that he could not see the door stop because it was dark, Try-Us "should have provided him
13 with a flash light or other means to work in the dark." (*Id.*) In light of these affirmative defenses
14 and allegations, plaintiff contends that the trier of fact in the underlying state court action may
15 find that non-parties Mr. Rathi and Try-Us were comparatively or contributorily negligent and
16 may apportion fault among them, even though Foster Farms is the only named defendant in that
17 action. (*Id.* at 4.) Plaintiff argues that the fact that Mr. Rathi did not name Try-Us as a defendant
18 in the underlying action is not outcome determinative here. (*Id.* at 7, 9.) Because of Foster
19 Farms's affirmative defenses, it contends that Try-Us will nevertheless be on the verdict form for
20 apportionment of fault by a nonparty tortfeasor. (*Id.* at 7); *see also* CACI No. 406 ("If you find
21 that the [negligence/fault] of more than one person including [name of defendant] [and] [[name of
22 plaintiff]/ [and] [name(s) or description(s) of nonparty tortfeasor(s)]] was a substantial factor in
23 causing [name of plaintiff]'s harm, you must then decide how much responsibility each has by
24 assigning percentages of responsibility to each person listed on the verdict form."). Further,
25 because Mr. Rathi was injured during the course and scope of his employment with Try-Us,
26 plaintiff emphasizes that "[Mr.] Rathi was barred from asserting any claims against his employer
27 Try-Us [under California's workers' compensation laws], even if he believes Try-Us [] was
28 negligent." (*Id.* at 9.)

9

In reply, defendant argues that Foster Farms's affirmative defenses and assertions of negligence by Mr. Rathi or Try-Us are legally irrelevant because "[i]t is not the putative insured's claims or assertions that matter for purposes of determining additional insured status"—it is the plaintiff's claims in the underlying action that are relevant to that determination. (Doc. No. 13 at 2–3.) Defendant cites the decision in *Monticello Ins. Co. v. Essex Ins. Co.*, 162 Cal. App. 4th 1376 (2008) in support of its argument in this regard. Defendant contends that Foster Farms ignores the holding of *Monticello* by focusing on the allegations of Try-Us's negligence that Foster Farms itself has raised in its answer to Mr. Rathi's complaint in his state court action, rather than on Mr. Rathi's allegations—of which, there are none alleging that Try-Us was negligent. (Doc. No. 13 at 2.) However, the decision in *Monticello* does not stand for the broad proposition that assertions or allegations made by the putative insured are wholly irrelevant to the determination of whether the insurer has a duty to defend. As explained below, the court in *Monticello* found that such allegations were simply unavailing to establish the insurer's duty to defend in that particular case.

In *Monticello*, a state appellate court affirmed the denial of summary judgment in an equitable contribution action brought by a general contractor's insurer against a drywall subcontractor's insurer. *Monticello*, 162 Cal. App. 4th at 1378. The general contractor was an additional insured on the drywall subcontractor's insurance policy but "only as respects negligent acts or omissions of the [drywall subcontractor] and only for occurrences, claims or coverage not otherwise excluded in the policy." *Id.* at 1386, n.4. Under the policy, coverage was limited to consequential or resultant property damage caused by defective drywall work, and the additional insured endorsement provided that "no coverage nor defense shall be afforded to" additional insureds where no coverage exists for the drywall subcontractor. *Id.* at 1379, n.1, 1386, n.4. The court concluded that the drywall subcontractor's insurer did not owe a duty to defend the general contractor in an action brought by homeowners for construction defects "because neither the pleadings nor the extrinsic evidence in the underlying action revealed a possibility that the homeowners' claims against [the general contractor] might be covered by the drywall subcontractor's policy." *Id.* at 1378. As for the pleadings, the court found that the homeowners

did not allege any damages related to drywall work at all, let alone consequential damages caused by defective drywall work—the only damages covered by the policy. *Id.* at 1387. The court next considered whether facts extrinsic to the complaint triggered the insurer's duty to defend but concluded that the only extrinsic fact offered by the general contractor's insurer (a "defects list" of construction deficiencies) "play[ed] no role in [its] duty to defend analysis" because the general contractor's insurer did not tender the defects list to the drywall subcontractor's insurer during the pendency of the underlying action when it still had an opportunity to participate. *Id.* at 1388–89. Lastly, the court considered and rejected the argument that the duty to defend was created by the general contractor's cross-complaint against the drywall subcontractor for indemnity, in which the general contractor alleged that the drywall subcontractor was negligent. *Id.* at 1389. In this regard, the court explained that "[t]he cross-complaint for indemnity does nothing to alter the fact that the [homeowners], the plaintiffs in the main action, *the action for which a defense is sought*, did not allege covered damages against [the drywall subcontractor]," and the allegations in the cross-complaint "cannot substitute for the absence of such allegations by the [homeowners]." *Id.* Importantly, the court had analyzed the text of the insurance policy, the additional insured endorsement, and the exclusions set forth therein—which not only limited coverage to negligent acts by the drywall subcontractor, but also specifically limited the type of covered damages. *Id.* at 1386–89. With these specific limits in mind, the court in *Monticello* concluded that although the general contractor's cross-complaint for indemnity alleged the drywall subcontractor's negligence, the general contractor's cross-complaint did not allege covered damages. *Id.* at 1389. Accordingly, in the undersigned's view, defendant CBIC inaccurately characterizes the court's opinion in *Monticello* by stating in its pending motion that "[t]he court held that only the allegations in the complaint for which coverage is sought matter in determining whether there is a duty to defend that complaint." (Doc. No. 9 at 7.) For this reason, defendant's reliance on *Monticello* is unpersuasive.

Defendant also relies on the decision in *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106 (1995) to support its argument that "Foster Farms may not create additional insured coverage by speculating as to whether Rathi could have alleged negligence against Try-Us

1   Transportation." (Doc. No. 9 at 8.) However, *Gunderson* is readily distinguished from this case
2   and does not serve to advance defendant's argument. In *Gunderson*, the California Court of
3   Appeal affirmed the granting of summary judgment in favor of a defendant insurer on the insured
4   homeowners' duty to defend claim because the third party lawsuit brought by a neighbor against
5   the homeowners alleged only equitable claims related to an easement and adverse possession on
6   their property—not claims for "tangible property damage or bodily injury," which were the only
7   types of claims covered by the homeowners' liability policy. 37 Cal. App. 4th at 1110–15. The
8   homeowners argued that because the neighbor "*could* have made a claim for 'physical injury to or
9   destruction of tangible property' in connection with the fence across a portion of the easement
10  which [the homeowners] removed at the outset of the dispute," there was a potential for liability,
11  thereby triggering the duty to defend. *Id.* at 1115. The court rejected this argument and
12  explained that the potential for liability cannot come from the homeowners' speculation about
13  how the neighbor might amend her complaint at some future date to allege new claims that would
14  be covered. *Id.* at 1115–17 ("Just as a third party complainant is not the arbiter of the coverage of
15  an insurance policy, so is it also the rule that insureds themselves may not manufacture coverage
16  by speculating about unpled third party claims.").

17          Unlike the homeowners in *Gunderson*, Foster Farms is not speculating about whether Mr.
18  Rathi will amend his complaint to assert a negligence claim against Try-Us. Notably, in arguing
19  that the potential for coverage already exists, Foster Farms does not depend on Mr. Rathi bringing
20  such a negligence claim against Try-Us at some future date. Indeed, according to Foster Farms,
21  Mr. Rathi is precluded by workers' compensation laws from asserting such a claim against his
22  employer. (Doc. No. 12 at 9.) The court agrees with Foster Farms that the questions of whether
23  Try-Us was negligent and the extent to which such negligence caused Mr. Rathi's alleged injuries
24  are already at issue in the underlying state court action due to Foster Farms's asserted affirmative
25  defenses. Simply put, the potential for coverage in the underlying action does not hinge on
26  whether Mr. Rathi might amend his complaint to plead a negligence claim against Try-Us as a
27  named defendant in that action.
28  /////

Indeed, to conclude otherwise would require either reading additional limiting language into the Policy or construing ambiguities in the Policy against the insured, which would run afoul of the "principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) in order to protect the insured's reasonable expectation of coverage." *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 868 (1998).  By the Policy's terms, coverage extends to the additional insured "only with respect to liability for "bodily injury" . . . *caused by* [Try-Us's] negligence in the performance of [Try-Us's] ongoing operations performed for that additional insured." (Doc. No. 10 at 58) (emphasis added). The Policy does not state, for example, "caused *solely* by" or "caused *exclusively* by" Try-Us's negligence, or "caused by Try-Us's *sole* negligence"—yet that is how CBIC implicitly urges the court to interpret and apply the Policy's terms. The court declines to adopt such a narrow and unsupported interpretation of the Policy's phrase "caused by" and instead interprets the provision to include coverage for bodily injury caused *in whole or in part* by Try-Us's negligence.

Given the affirmative defenses asserted by Foster Farms in the underlying state court action, it is possible that the trier of fact, in apportioning comparative fault, may determine that Mr. Rathi's bodily injury was caused (in whole or in part) by Try-Us's negligence. That possibility—which was known to CBIC at the time Foster Farms tendered its defense—is sufficient to trigger CBIC's duty to defend. Unlike the extrinsic fact of the "defects list" that was not considered by the court in *Monticello* because it was not provided to the insurer during the pendency of that underlying action, 162 Cal. App. 4th at 1388–89, here Foster Farms informed CBIC of its affirmative defenses and the factual basis for Try-Us's and Mr. Rathi's alleged negligence while the underlying action was pending and there was still an opportunity for CBIC to participate. Specifically, in correspondence tendering its defense to CBIC, Foster Farms described the factual basis for its affirmative defenses and quoted an excerpt from what appears to be a transcript of Mr. Rathi's deposition to support its contention that Mr. Rathi "admits that he was not paying attention to where he was walking when he tripped and fell." (Doc. No. 1 at 92.)

In sum, plaintiff's allegations in this action are sufficient to support its claim that there is the possibility of coverage in the underlying action, triggering the CBIC's duty to defend Foster

13

Farms as an additional insured under the Policy. *See Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005) ("If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage."). Because defendant moved to dismiss all of plaintiff's claims as a matter of law based solely on its argument that Foster Farms has not sufficiently alleged that it is an additional insured—an argument the court rejects—the court will deny defendant's motion to dismiss.

## CONCLUSION

For all of the reasons set forth above, defendant's motion to dismiss (Doc. No. 8) is denied.

IT IS SO ORDERED.

Dated:  **February 9, 2022**

_____
UNITED STATES DISTRICT JUDGE